TO: Clerk's Office
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

   APPLICATION FOR LEAVE
 TO FILE DOCUMENT UNDER SEAL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**A) If pursuant to a prior Court Order**:
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

    -v.-                       _____
                                 Docket Number

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**B) If a new application,** the statute, regulation, or other legal basis that authorizes filing under seal

SUBMITTED BY: Plaintiff____ Defendant____ DOJ ____
Name:_____
Firm Name:_____
Address:_____
_____
Phone Number:_____
E-Mail Address:_____

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

INDICATE UPON THE PUBLIC DOCKET SHEET: YES____ NO____
**If yes, state description of document to be entered on docket sheet:**

DATED: _____, NEW YORK
*Lois Bloom*   8/15/22

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE_____
                                    DATE

**MANDATORY CERTIFICATION OF SERVICE**:
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation:_____; or **C.)** ____This is a criminal document submitted, and flight public safety, or security are significant concerns. (Check one)

_____        _____
     DATE                        SIGNATURE

DG:DAS
F. #2020R01130

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

MICHAEL PAPADOPOULOS,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

TO BE FILED UNDER SEAL

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF AN APPLICATION
FOR AN ARREST WARRANT

(18 U.S.C. § 1956(h))

Case No. 22 MJ 876

EASTERN DISTRICT OF NEW YORK, SS:

      TRISTIN JONES, being duly sworn, deposes and states that she is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

      Upon information and belief, in or about and between November 2019 and December 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL PAPADOPOULOS, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, to wit: narcotics trafficking and narcotics trafficking conspiracy, in violation of Title 21, United States Code, Sections 841(a) and 846, knowing that the property involved in the transactions was to represent the proceeds of some form of unlawful activity, and (i) acting with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (ii) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of

the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h))

The source of your deponent's information and the grounds for her belief are as follows:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), El Dorado Task Force, which is a financial task force. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been with HSI since July 2019. Prior to that, I was an Analyst assigned to the Special Inspector General for Afghanistan Reconstruction, where I worked for approximately seven years investigating crimes and auditing U.S. Government-funded programs related to the reconstruction effort in Afghanistan. During my career as a law enforcement officer, I have participated in numerous investigations of federal crimes, including unlawful drug trafficking and money laundering, and have, among other things, conducted or participated in surveillance and the execution of search warrants—including the execution of search warrants for the purpose of tracking vehicles. I have been trained in various aspects of law enforcement, including the investigation of narcotics and money laundering offenses. I am familiar with the manner and means in which narcotics are trafficked and the proceeds are collected, processed, transported, and laundered.

2. This affidavit is made in support of an application for a warrant to arrest the defendant MICHAEL PAPADOPOULOS for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

3. The facts set forth in this affidavit are based upon my personal involvement in this investigation, my review of reports and other documents related to this investigation, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the government's investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. Unless specifically indicated otherwise, all dates set forth below are on or about the dates indicated, and all amounts or sums are approximate.

## **PROBABLE CAUSE**

A. <u>Overview</u>

4. As described in detail below, the defendant MICHAEL PAPADOPOULOS was as a key participant in a money laundering conspiracy. Specifically, PAPADOPOULOS used trucks to transport narcotics proceeds across the country. PAPADOPOULOS both drove the vehicles containing narcotics proceeds and hired others to drive or transport the vehicles. As described in this affidavit, the total amount of narcotics proceeds transported by PAPADOPOULOS and those he hired was over $1.4 million.

B. <u>The March 2020 Seizure</u>

5. On or about March 26, 2020, a law enforcement officer in Brandon, Mississippi conducted a traffic stop of a commercial car-hauling trailer after the driver swayed twice onto the shoulder of the road. Upon approaching the vehicle, the officer observed that the trailer was carrying a 2019 Ford F-250 truck with Missouri license plate 7ADK45 (the "2019

Ford"). The officer observed that the 2019 Ford had an after-market fuel tank, which, based on his experience, he knew to be indicative of the presence of a hidden compartment.

6. The officer requested that the driver ("Driver-1") remove the 2019 Ford from the trailer for further inspection. Upon a consent search, the officer found $857,000 in bulk cash, plastic-wrapped and concealed in a duffel bag inside the 2019 Ford truck bed, which had been locked with hydraulic pistons. The officer detected the smell of marijuana in the 2019 Ford's toolbox and from the recovered bulk cash. A narcotics detection K-9 also alerted to the scent of narcotics on the bulk cash.

7. Driver-1 claimed no knowledge of the bulk cash and provided law enforcement with the bill of lading for the 2019 Ford. It indicated that the 2019 Ford had been picked up at 598 Sunrise Highway Baldwin, New York 11510, which law enforcement later learned is a bodyshop called Speedworld (see infra ¶ 17), and the delivery address was 4300 Auburn Boulevard, Sacramento, California 95841. Law enforcement also ran the vehicle information number ("VIN") on the 2019 Ford and it came back to Nationwide Land Developers and Surveyors LLC ("Nationwide"), 8939 Cambridge Avenue, Kansas City, Missouri 64138. A search of the Missouri Secretary of State records found that the defendant MICHAEL PAPADOPOULOS was the owner of this business. Law enforcement then seized the 2019 Ford.

8. In May 2020, the defendant MICHAEL PAPADOPOULOS came to Brandon, Mississippi to recover the 2019 Ford. PAPADOPOULOS indicated to law enforcement that he was the owner of the vehicle, and the vehicle was released to him. On the property release form, PAPADOPOULOS listed his phone number as 516-659-1489.

C.      The August 2020 Seizure

9.      On or about August 26, 2020, law enforcement officers in Lincoln County, Colorado conducted a traffic stop of a 2020 white Ford F-250 truck, which at that time had the Missouri license plate number 6DCT05 (the "2020 Ford"),[1] after observing the driver ("Driver-2") commit multiple traffic violations.  Law enforcement also observed that the truck bed was locked with hydraulic pistons.

10.     Upon a consent search of the vehicle, law enforcement discovered $424,950 in cash, plastic-wrapped and concealed inside the spare tire of the vehicle, which was mounted underneath the truck bed near the rear of the 2020 Ford.

11.     Driver-2 agreed to speak with law enforcement.  She stated that someone named "Mike" had asked her to drive the 2020 Ford from New York to Denver International Airport ("DIA").  Driver-2 said that she did not know "Mike's" last name, but she knew it was a long name beginning with a "P."  Based on this statement, the facts set forth below, and my knowledge of the investigation, I believe that "Mike" is the defendant MICHAEL PAPADOPOULOS.

12.     Driver-2 said that "Mike" left the 2020 Ford at her house in Merrick, New York on August 24, 2020, and she left for DIA the following day.  Driver-2 also stated that "Mike" instructed her that once she arrived at DIA, she was to park the 2020 Ford, leave the keys inside, send "Mike" a photo of where the 2020 Ford was parked and then get on a flight back to New York.  Driver-2 also stated that she was paid $5,000 to take this trip and that she had done another trip for "Mike" earlier in August 2020, for which Driver-2 was also paid $5,000.

---

[1]     Law enforcement later learned that the 2020 Ford had the VIN 1FT7X2BT9LED01824.

6

13.     Driver-2 also consented to a search of her phone.   This search uncovered that Driver-2 had texted with "Mike" on the number 516-659-1489, which the number that the defendant MICHAEL PAPADOPOULOS provided as his telephone number on the property release form in connection with the March 2020 seizure described above.   Certain of the text messages between Driver-2 and PAPADOPOULOS are included below:

a.     On August 6, 2020, PAPADOPOULOS texted Driver-2:   "Yea, I spoke to [Coconspirator-1, an individual whose identity is known to your affiant] about it, he's around Sunday, so he'll drop you off to pick it up.   I'll leave the money, ezpass and the directional way I go in the front console."   Then, on August 8, PAPADOPOULOS texted Driver-2, "I have everything ready."   On August 10, Driver-2 texted PAPADOPOULOS a photo of the 2020 Ford and PAPADOPOULOS responded, "Wow thank you!   Great time! . . . I'm impressed.   Great job, you are a professional driver.   So whenever you get back, and get rested, text [Coconspirator-1], and he'll drop off the other 3k."   These text messages are consistent with the prior trip that Driver-2 stated that she made for "Mike" in early-August 2020.

b.     On August 18, 2020, PAPADOPOULOS texted Driver-2, "Hope your [sic] well rested.   Let's do this again ny to Denver airport. . . . I'll get the truck serviced with new oil and I'll meet you sometime on Sunday to hand over the truck."   On August 23, 2020, PAPADOPOULOS texted Driver-2, "Can I come drop the truck off at your house around 515-530."   Later that day, Driver-2 sent PAPADOPOULOS a text thanking him and asking when he would be arriving in Denver.   PAPADOPOULOS responded by saying August 26, 2020 at 3:00 p.m.   These text messages corroborate Driver-2's statement to law enforcement regarding her August 2020 trip.

14. With law enforcement present, Driver-2 conducted a consensually monitored call to the defendant MICHAEL PAPADOPOULOS at 516-659-1489 to inform him she had been pulled over by the police. After her interaction with law enforcement, Driver-2 proceeded to drive the 2020 Ford to DIA, where it was monitored by law enforcement.

15. At approximately 6:51 p.m. on August 26, 2020, law enforcement observed the defendant MICHAEL PAPADOPOULOS enter the 2020 Ford in the DIA parking lot and leave the airport. Approximately 40 minutes later, the 2020 Ford was stopped by law enforcement for a traffic infraction. PAPADOPOULOS provided his license, which was a Missouri license that listed as his home address the same address where the 2019 Ford was registered. The title for the 2020 Ford was in the name of Nationwide, with the same address as was listed on PAPADOPOULOS's license, and the same phone number as Driver-2 had saved in her phone as "Mike."

16. Less than one month later, on or about September 21, 2020, the defendant MICHAEL PAPADOPOULOS purchased a new license plate from the Department of Motor Vehicles in Jefferson City, Missouri. The new license plate was a Missouri plate with number 2UDX23.

D. The December 2020 Seizure

17. At approximately 7:15 a.m. on December 27, 2020, law enforcement observed the defendant MICHAEL PAPADOPOULOS arrive at the Speedworld location at 598 Sunrise Highway, Baldwin, New York 11501 (the "Speedworld"), which is the same location where the 2019 Ford had been picked up in connection with the March 2020 stop and seizure. PAPADOPOULOS arrived at the Speedworld in a white Jeep Grand Cherokee, New York

license plate number HMT5079, but quickly got out of this vehicle and entered the 2020 Ford, which had been parked at the Speedworld since at least the day prior.

18. At approximately 7:24 a.m., the defendant MICHAEL PAPADOPOULOS left the Speedworld in the 2020 Ford, which at that time had license plate number 2UDX23. See supra ¶ 16.

19. Later that morning, law enforcement stopped the 2020 Ford in Queens, New York, for the violation of driving a commercial vehicle on a state parkway—namely, the Cross Island Parkway. At the time of the traffic stop, the defendant MICHAEL PAPADOPOULOS provided law enforcement with verbal consent to search the vehicle.

20. During the search, law enforcement observed worn-out screw bolts on the tailgate of the 2020 Ford that appeared to have replaced the screw bolts that come standard with the vehicle. When law enforcement asked the defendant MICHAEL PAPADOPOULOS about these screw bolts, PAPADOPOULOS responded that there was money concealed within the tailgate. Law enforcement then asked PAPADOPOULOS if he had a tool that they could use to unscrew the bolts and open the tailgate, and PAPADOPOULOS provided the tool to law enforcement. Law enforcement then removed the screw bolts and found multiple plastic-wrapped bundles of U.S. currency concealed within the tailgate. Law enforcement later

determined that approximately $185,000 was concealed within the tailgate.   Photographs are included below:







21.     Subsequent testing of the currency determined the presence of both cocaine and THC on the currency.

22.     After law enforcement found the currency, the defendant MICHAEL PAPADOPOULOS was placed under arrest and brought to HSI's office in New York, New York.   PAPADOPOULOS was then read his Miranda rights and provided with a Statement of Rights form.   PAPADOPOULOS waived his Miranda rights, both orally and in writing, and agreed to speak with law enforcement.

23.     During his law enforcement interview, the defendant MICHAEL PAPADOPOULOS admitted, among other things, that the 2020 Ford was his, that he purchased it approximately one year prior and that his company owned the title to the vehicle.

24.     The defendant MICHAEL PAPADOPOULOS also admitted that the money seized from the tailgate of the 2020 Ford was narcotics proceeds that he claimed belonged to Coconspirator-1.   PAPADOPOULOS also stated that the monies seized from the 2019 Ford in March 2020 and from the 2020 Ford in August 2020 were also narcotics proceeds belonging to Coconspirator-1.

25. Further, the defendant MICHAEL PAPADOPOULOS admitted that he was paid between $5,000 and $8,000 to drive the 2020 Ford, whether it contained narcotics or narcotics proceeds, across the country, and that he knew other drivers were paid to do the same task. PAPADOPOULOS also stated that he made multiple flights to and from the West Coast in furtherance of this scheme, often after having driven one way transporting contraband or narcotics proceeds. A review of PAPADOPOULOS's bank records confirms that he made numerous cash deposits of between $5,000 and $8,000 between November 2019 and December 2020, including multiple occasions where he made a cash deposit in this range within one day of flying between California and New York.

26. After the interview concluded, law enforcement released the defendant MICHAEL PAPADOPOULOS, and charges were not filed against him at that time.

27. Two days later, on December 29, 2020, the defendant MICHAEL PAPADOPOULOS returned to the HSI office to retrieve the personal items that were recovered from the 2020 Ford at the time of the seizure. At that time, he agreed to speak further with HSI. PAPADOPOULOS was not in custody at this time, and he returned to the HSI office of his own volition.

28. During this voluntary interview, the defendant MICHAEL PAPADOPOULOS stated that he picked up the money from the Speedworld on December 26, 2020 and loaded it into the tailgate of the 2020 Ford himself. PAPADOPOULOS also stated that he knew that the 2020 Ford was used to transport both narcotics—specifically, marijuana—and cash.

****

12

WHEREFORE, your affiant respectfully requests that defendant MICHAEL PAPADOPOULOS be dealt with according to law.

IT IS FURTHER REQUESTED that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the affidavit and arrest warrant. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and arrest warrants via the internet. Therefore, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation.

_____
TRISTIN JONES
Special Agent
United States Department of Homeland Security,
Homeland Security Investigations

Sworn to before me by reliable electronic means this
___15th___ day of August, 2022

_Lois Bloom_
_____
THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| United States of America | ) |
|---|---|
| v. | ) |
| Michael Papadopoulos | ) Case No. 22 MJ 876 |
| | ) |
| *Defendant* | ) |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Michael Papadopoulos                                                                                                                        ,
who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment    ❏ Superseding Indictment    ❏ Information    ❏ Superseding Information    ☑ Complaint
❏ Probation Violation Petition    ❏ Supervised Release Violation Petition    ❏ Violation Notice    ❏ Order of the Court

This offense is briefly described as follows:

  Title 18, United States Code, Section 1956(h) (money laundering conspiracy)

Date:    08/15/2022

*Lois Bloom*

*Issuing officer's signature*

City and state:    Brooklyn, NY                                    Hon. Lois Bloom, U.S.M.J.

*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____   Weight: _____

Sex: _____   Race: _____

Hair: _____   Eyes: _____

Scars, tattoos, other distinguishing marks: _____

History of violence, weapons, drug use: _____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

FBI number: _____

Complete description of auto: _____

Investigative agency and address: _____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____